### FREEMAN vs. FREEMAN & CHALLIS.

This was a bill in chancery, filed by the wife against her husband, and the adm'r of her father's estate. The bill alleged that the father of complainant had by deed conveyed to the complainant, as her separate property, for her separate use, three slaves: that she had taken possession of said slaves, and hired them out, but that her husband had obtained possession of them, and held them as his exclusive property, and had "given out in speeches" that he intended to sell said slaves and convert the proceeds to his own use. The bill also stated that her father had devised to complainant and her sister several other slaves; and that her said husband had stated that on a distribution of the estate, he intended to get possession of the slaves, "and run them out of the State." It prayed the appointment of a trustee, &c.

Held,

1. That the husband is at law the trustee of his wife's property, unless the instrument vesting the property in the wife, appoint another trustee, &c.

2. That the bill shews no ground for the interference of a court of equity. It is not alleged that the husband is insolvent, or the property such as could not be compensated in damages.

3. The bill does not allege that the complainant believes the husband will carry his threats into execution.

### APPEAL from Boone Circuit Court.

NAPTON, J., delivered the opinion of the court.

This was a bill in chancery by Mary Ann Freeman, against her husband Jonathan Freeman and Hezekiah Challis, administrator of the estate of Moses Webb, deceased.

The bill states that Moses Webb, the father of the complainant, on the 2d January, 1842, in consideration of love and parental affection, granted by deed to the complainant, for her separate use, three slaves. The complainant further represents, that since the death of her father, she took possession of said slaves, and hired them out as her separate property, but that her husband, the defendant, has since obtained pos-

session of them, and continues to treat them as his exclusive property. The complainant further states, that her said husband has "given it out in speeches," that he intended to sell said slaves and convert the proceeds to his own use, so as to destroy complainant's right of disposition over the slaves.

The bill further states, that said Moses Webb, by his will, which has been since his death admitted to probate, bequeathed his property to the complainant and her sister, Polly Gray, in equal moieties, upon the following conditions, to wit: that complainant and said Polly Gray, enjoy the benefit of his slaves during their natural lives, and at their death said slaves should go to their lawful heirs, if any; but if the said complainant and the said Polly Gray should have no lawful heirs of their bodies, then the said slaves to be set free. It is further stated, that Hezekiah Challis is the sole administrator of this estate: that Moses Webb left several slaves, one half of which complainant alleges is her separate property: that the estate is not in debt. The complainant charges that said Jonathan Freeman has on several occasions stated to the complainant and divers other persons, that he intended, upon a distribution of said slaves, to get them in his possession and "run them out of the State," and so to defeat the rights of the complainant, and the contingent rights of the slaves themselves.

The complainant further states, that said Moses Webb did not, either in the deed or will above mentioned, appoint a trustee to manage the separate interests of the complainant; and it is charged that the conduct of said Freeman shows him to be unworthy of the trust: therefore prays the appointment of a trustee, &c.

To this bill there was a demurrer, and the demurrer was sustained by the circuit court.

The deed and will of Moses Webb are made exhibits in the cause, and the question has been made at the bar, whether the complainant takes a seperate estate in the slaves; but any opinion upon this point we deem unnecessary. Assuming that the slaves are the separate property of the complainant, the bill does not make out a case authorizing the interposition of a court of chancery. The husband is by law the trustee for the management of his wife's separate property, unless the instrument creating it has constituted another such trustee; Hamilton vs. Bishop, 8 Yerger, 33. There can be no doubt of the right of a court of chancery to interfere where there has been waste or mismanagement of the fund, and the trustee is not responsible. The complainant, whilst she alleges that her husband has threatened to sell or *run off* her slaves, does not state that she even believes that he will ever carry his threats

into execution, nor that he is not fully responsible in the event that he does. Jonathan Freeman is not alleged to be insolvent, or likely to become insolvent; nor does the complaint aver that the property has any peculiar value, which would render *damages* no compensation to her for its loss.

This bill is not based upon the complaint of any inadequate provision for the wife, or to compel the husband to make a suitable provision before he shall be permitted to get possession of the separate property of his wife. It is in the nature of a bill *quia timet*, but alleges neither insolvency nor any apprehension of insolvency.

Decree affirmed.